### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  WILLIAM RASBERRY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIV-13- 1356-D |
| 1.  CHUY'S OPCO, INC., | ) ) | JURY TRIAL DEMANDED ATTORNEY LIEN CLAIMED |
| Defendant. | ) ) | |

### COMPLAINT

**COMES NOW THE PLAINTIFF** and for his causes of action herein alleges:

### PARTIES

1. The Plaintiff is William Raspberry, an adult resident of Cleveland County, Oklahoma.

2. The Defendant is Chuy's OPCO, Inc. a corporation doing business in Cleveland County, Oklahoma.

### JURISDICTION AND VENUE

3. Plaintiff's claim is for disability discrimination, including failure to accommodate, and retaliation (including termination) for requesting reasonable accommodations for such disability and complaining of disability discrimination, in violation of the Americans with Disabilities Act as set forth in 42 U.S.C. § 12111, *et seq.*; race discrimination in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981; for age discrimination in violation of the Age Discrimination in Employment Act (ADEA). Discrimination and/or retaliation on the basis of age, race and/or disability also violates the Oklahoma Anti-Discrimination Act. Plaintiff also claims retaliation after Plaintiff requested FMLA protected leave and interference with the FMLA in violation of the FMLA. Jurisdiction over the federal claims is vested in this Court under 29 U.S.C. § 2617(a)(2); 42 U.S.C. §2000e-5(f)(1); 42 U.S.C. § 12117(a); 28 U.S.C. § 1331. Because the state law claims arise out of the same core of facts, jurisdiction is vested over those claims under 28 U.S.C. § 1367(a).

4. All of the actions complained of occurred in Cleveland County, Oklahoma and the Defendant may be served in that county. Cleveland County is within the Western District of the United States District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Defendants employed more than fifty (50) employees during at least twenty (20) weeks of each calendar year between 2012 and 2013 who worked within seventy-five (75) road miles of the location where Plaintiff worked. Accordingly, the Defendant is a covered employer under the FMLA, the ADEA, the ADA and Title VII. There is no minimum employee requirement to be a covered employer under the OADA.

6. At the time of Plaintiff's request for FMLA protected leave the Plaintiff worked for the Defendant for more than a year, had worked more than twelve-hundred and fifty (1250) hours during the past twelve months and had not used twelve weeks of FMLA protected leave.

7. The Plaintiff is an adult African American (black) male who was employed by the Defendant from around June 9, 2008 until around June 25, 2013.

8. Plaintiff suffers from an auto-immune disorder which, without regard to the ameliorative effects of mitigating measures, substantially limits one or more major life activities and bodily functions including, but not limited to:
   A. Plaintiff's organs, including his lungs and skin, become severely inflamed and his immune system would be significantly impaired;
   B. Plaintiff's ability to breathe would be significantly impaired;
   C. Plaintiff would be unable to sleep more than an hour or so each night without waking.

9. As a result of the limitations set out in Para. 8, above, Plaintiff suffers from a

disability as defined by the ADA Amendments Act (ADAAA), 42 U.S.C. § 12102(1)(A), (2)(B), in that he suffers from a condition which materially impairs major life activities and bodily functions as defined by and/or is regarded as having such impairment as defined by 42 U.S.C. § 12102(1)(C), (3).

10. At the least, Defendant perceived Plaintiff as having a disability. Plaintiff's direct supervisor, Christina Folsom and Damien Gerraro (Area Manager) demoted and ultimately terminated Plaintiff after Plaintiff disclosed his illness and made comments indicating Plaintiff was incapable of satisfactorily performing his job because of his medical condition.

11. Around April 2012 Plaintiff was transferred from Texas to Defendant's facility in Norman, Oklahoma and worked as the Kitchen Manager at the Norman, Oklahoma facility.

12. Plaintiff was qualified for his job position and capable of performing all of the essential functions of his job with reasonable accommodations.

13. Around January 2013 Christina Folsom became the General Manager for the Norman, Oklahoma facility. As General Manager, Ms. Folsom was Plaintiff's direct supervisor.

14. Prior to becoming District Manager, Ms. Folsom had commented that she did not like the Plaintiff because he was black.

15. Plaintiff was the only African American supervisor at the Norman, Oklahoma location.

16. Other supervisors, including Frank Keith (white) made frequent racial comments about black people being lazy, uneducated, stupid and/or unemployed.

17. Around May, 2013 Plaintiff developed severe bronchitis. Plaintiff's auto-immune disability caused or contributed to the development of his bronchitis.

18. Plaintiff told Ms. Folsom about his disability and bronchitis and requested three days

off work to recover.

19. Ms. Folsom appeared angry at Plaintiff's request and refused to allow Plaintiff three days off work.

20. Bronchitis is a serious medical condition such that Plaintiff was entitled to take FMLA leave.

21. Ms. Folsom did allow Plaintiff to take one day off work; however, this was not enough time for Plaintiff to recover from his illness.

22. Approximately a week later, Plaintiff's medical issue worsened and Plaintiff again requested time off work for treatment.

23. Ms. Folsom told Plaintiff he could take three days off work, however in the same conversation verbally reprimanded the Plaintiff for taking off work.

24. Around mid-June, 2013 Plaintiff developed severe shingles, which were a symptom of Plaintiff's disability. Plaintiff reported his medical condition to Ms. Folsom and other supervisors, who made comments about shingles being an "old man's disease" and that "only old people get shingles". It was suggested to Plaintiff that he obtain an "AARP card" which is a card for retired or nearly retired persons issued by the American Association of Retired Persons. While Ms. Folsom did not make many of the comments, they were made in front of her and she laughed and joked when such comments were made.

25. Around the end of June, 2013 the Plaintiff requested time off work for treatment of his shingles. Plaintiff made the request to Ms. Folsom, who became visibly angry and told Plaintiff that his medical issue "wasn't that big of a deal" and was not a reason to take off work. During this conversation, Ms. Folsom denied Plaintiff's request for time off work.

26. Later, Ms. Folsom reversed her initial denial of time off work and told Plaintiff he could take off work for three days for treatment.

27. On the second day of Plaintiff's requested leave, Ms. Folsom called Plaintiff at his home and instructed him to meet her and Damien Gerraro (Area Manager) the following day for a work related meeting.

28. As a result of the meeting, Plaintiff was not allowed the three full days off work, as he had requested and which was protected by the Family Medical Leave Act.

29. During the meeting, Mr. Gerraro and Ms. Folsom both discussed the severity of Plaintiff's illness and appeared disgusted at his medical condition. Plaintiff was verbally counseled about taking days off work for his medical condition.

30. During the meeting Mr. Gerraro commented that Plaintiff would soon be leaving the company and that he was going to "speed the process along" by demoting Plaintiff to Assistant Kitchen Manager, which was a demotion in terms of job title, status and pay.

31. Frank Keith, a white employee who had previously made racial comments about black employees in front of Ms. Folsom, was promoted to the Kitchen Manager position. Mr. Keith became Plaintiff's immediate supervisor.

32. During the meeting, Mr. Gerraro presented a document to the Plaintiff and instructed him to sign the document which stated that Plaintiff was being demoted for performance reasons.

33. The reasons set out in the document were untrue and inconsistent with the statements made by Mr. Gerraro and Ms. Folsom during the meeting, which indicated Plaintiff was being demoted for medical reasons.

34. Plaintiff was more qualified than Mr. Keith for the Kitchen Supervisor position as he had been employed in that position longer than Mr. Keith, had more experience in the position, and had trained Mr. Keith when Mr. Keith was the Assistant Kitchen Manager.

35. After Plaintiff returned to work, now as the Assistant Kitchen Manager, Mr. Keith

(now Plaintiff's immediate supervisor), continued to make comments similar to those set out above, including about Plaintiff being old, about Plaintiff's medical condition, and about black people being lazy and stupid. These comments were again made in front of Ms. Folsom, who laughed and joked along. These comments occurred on a near daily basis.

36. In addition to demoting Plaintiff to Assistant Kitchen Manager, Plaintiff's schedule was changed such that he went from working mostly days to working mostly evenings which prevented Plaintiff from seeing his school age children. In addition, Plaintiff was not allowed to attend supervisory leadership meetings which generally all supervisors are allowed to attend.

37. Around mid-June, 2013 Plaintiff's medical condition again worsened and Plaintiff was in constant and excruciating pain from the shingles that covered a large part of Plaintiff's torso. Plaintiff requested a couple of days off to recover and seek additional medical treatment. Ms. Folsom denied Plaintiff's request and required Plaintiff to continue working.

38. Allowing Plaintiff to take off work, for treatment, for his medical condition is a reasonable accommodation for his disability.

39. Plaintiff's requests for leave were requests for treatment for a serious medical condition and such requests are protected under the Family Medical Leave Act.

40. Although Plaintiff told Defendants the reasons for his leave, the Defendants never gave Plaintiff individualized notice of his rights under the FMLA. Defendants never told Plaintiff whether such leave was protected under the FMLA, nor did Defendant inform Plaintiff that such leave was not protected under the FMLA and give Plaintiff at least one reason such leave was not protected under the FMLA.

41. Refusal to allow Plaintiff to take off work for treatment of his serious medical condition interfered with Plaintiff's rights under the FMLA and such interference is

a *per se* violation of the FMLA.

42. Around June 25, 2013 Mr. Gerraro (Area Manager) told Plaintiff he would not be allowed to receive bonuses for the remainder of his employment. Mr. Gerraro also told Plaintiff that he would be "fired" if he did not "support" Mr. Keith, even though Mr. Keith continued to make repeated racial and ageist comments and comments about Plaintiff's medical issues.

43. On June 25, 2013, as a result of the continued harassment, discrimination and retaliation, Plaintiff was terminated in the form of a constructive discharge.

44. After Plaintiff's termination he underwent medical treatment for his disability, including around July or August, 2013. Had Plaintiff not been terminated, he would have been able to utilize FMLA leave for his medical appointments. Plaintiff was deprived of his ability to utilize FMLA leave as a result of his termination.

45. Defendant's failure to provide Plaintiff with individualized notice under the FMLA, and the termination of Plaintiff, which resulted in Plaintiff being deprived of the ability to utilize FMLA leave to which he was entitled, constituted, jointly and separately, unlawful interference with Plaintiff's rights under the FMLA.

46. Motivating factors in the demotion and termination of the Plaintiff were his race, age, disability, requests for FMLA protected leave, and/or requests for accommodation. At the least such factors may have been part of a mixture of motives for the decision such that Plaintiff is entitled to protection under the mixed motive doctrine.

47. As a direct result of the Defendant's conduct Plaintiff has suffered, and continues to suffer, lost wages (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm symptoms including but not necessarily limited to sadness, frustration, embarrassment, depression and similar unpleasant emotions.

48. Plaintiff has exhausted his administrative remedies by timely filing a charge of

discrimination on August 20, 2013. The EEOC issued Plaintiff his right to sue letter on December 18, 2013 and Plaintiff received such letter thereafter. This complaint is timely filed within ninety days of Plaintiff's receipt of his right to sue letter. Neither the FMLA nor 42 U.S.C. § 1981 require exhaustion of administrative remedies.

## COUNT I

For Plaintiff's first cause of action he incorporates the allegations set forth above and further provides that:

49. Discrimination on the basis of a disability or perceived disability, and retaliation for Plaintiffs' requests for accommodation is contrary to the ADA and the OADA.

50. Refusal to offer an available reasonable accommodation such as time off work for treatment of Plaintiff's medical condition is a *per se* violation of the ADA.

51. Under this Count, Plaintiff is entitled to compensation for his lost wages (past, present and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs.

52. Because the actions of the Defendant were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under both federal and Oklahoma law.

53. Plaintiff asserts that the OADA damage caps are unconstitutional under Oklahoma's prohibitions against special laws, and that Plaintiff is entitled to the full range of normal tort damages.

## COUNT II

For Plaintiff's second cause of action he incorporates the allegations set forth above and further provides that:

54. Retaliation against the Plaintiff for Plaintiff's exercise of his rights under the FMLA, and interference with Plaintiff's utilization of FMLA leave, are both violations of the

FMLA.

55. Defendant's actions were willful as defined by the FMLA.

56. As a result of such interference and/or retaliation Plaintiff is entitled to actual and equitable damages including lost wages (past, present and future and for the value benefits associated with such earnings), pre-judgment interest, attorney fees and costs.

57. Because the actions of the Defendant's actions were not taken in good faith, Plaintiff is entitled to an award of liquidated damages.

## COUNT III

For Plaintiff's third cause of action he incorporates the allegations set forth above and further provides that:

58. Discrimination on the basis of race violates Title VII and the OADA.

59. Under this Count Plaintiff is entitled to compensation for his lost wages (past, present and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs.

60. Because the actions of the Defendant were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under both federal and Oklahoma law.

61. Plaintiff asserts that the OADA damage caps are unconstitutional under Oklahoma's prohibitions against special laws, and that Plaintiff is entitled to the full range of normal tort damages.

## COUNT IV

For Plaintiff's forth cause of action he incorporates the allegations set forth above and further provides that:

62. Discrimination on the basis of a age violates the Age Discrimination in Employment Act and OADA.

63. Under this Count Plaintiff is entitled to compensation for his lost wages (past, present

and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs.

64. Because the actions of the Defendant were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under both federal and Oklahoma law.

65. Plaintiff asserts that the OADA damage caps are unconstitutional under Oklahoma's prohibitions against special laws, and that Plaintiff is entitled to the full range of normal tort damages.

**WHEREFORE,** Plaintiff prays that he be granted judgment in his favor and against the Defendant on all of his claims and that this Court grant the Plaintiff all available compensatory damages, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 26th DAY OF DECEMBER, 2013**.

HAMMONS, GOWENS & HURST

s/ Amber L. Hurst
Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
HAMMONS, GOWENS & hurst
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: Amberh@hammonslaw.com
       Mark@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED